Good afternoon. The next case of the day is 4-13-1128, Pupils State of Illinois v. Dana Hasselbring. For the appellant is Attorney Martinkus and for the appellee is Ms. Johnson, Attorney Johnson. Mr. Martinkus, are you ready to proceed? I am here. Alright, you may proceed. Thank you. May it please the court? Counsel. Counsel. Good afternoon. My name is Jim Martinkus and I represent Dana Hasselbring. I probably don't have to tell you this, but this case and your decision has substantial and great consequences, not only to Dana Hasselbring, his two-year-old son, his family, but to many other people who are situated in this position. I don't know about many other counties, but Champaign County has taken the position that a metabolite is sufficient to be convicted under the drug-driving statute. So your decision, as I'm sure you realize, does have substantial impact upon many cases that are pending and likely to be pending. I've raised many issues in my brief. I'm not going to have time to go through all those issues. Please don't think that I'm abandoning those issues or those issues have less impact, but realistically with the number of issues I've raised and the amount of time allotted, I can't address all of them. So I'm going to try my best to address those issues that I think are most important for this argument. The first issue is whether or not the aggravated drug-driving statute can be violated by simply having metabolites in one's body without any evidence of drugs or impairment. And I think you start off the analysis by looking at the statute. If you look at the statute, 11-501 specifically sets the terms of how you violate that statute. It states, driving while under the influence of alcohol, other drug or drugs, intoxicating compound or compounds, or any combination thereof. The statute itself contemplates that there has to be some sort of substance which impairs driving. And as we know in Martin and the other cases I've cited which I'll talk about today, the impairment can be either actual, you're actually impaired, or presumed. You can be presumed whether or not it actually manifests an actual impairment by having an alcohol content of .08 or having any amount of a drug in your system, not a metabolite, because there's no issue. A metabolite is not a drug in my opinion, and I think clearly it has no impact upon driving. So the first question is, if you look at this case, there was no issue with alcohol, alcohol was not involved. There was no issue of intoxicating compounds. That statute is commonly referred to on the streets as the Huffing Act, where kids can take glue and other chemicals and get high from that. So the only issue is whether or not this was a drug or drugs. Tara Kearns, who testified on behalf of the state... Counsel, real quickly, let me stop you. Certainly. You used the term intoxicating compound, but that's not what the statute says. It does, Judge, I understand that. I think it says substance or compound, and then later on it refers to intoxicating compound. If you look at the very first section of the statute, that's what I'm referring to. The very first section of the statute talks about driving under the influence of alcohol, other drug or drugs, intoxicating compound. That's the parameter here, this is the first section of the statute. I don't disagree with you, Your Honor, that later on down the road, it does talk about, in A6 and A4 specifically, it does talk about other factors. But when you look at the very premise of the statute, that's at least what the statute starts off with. I don't think there's any issue on that. The word's right in the statute. And all I'm saying is that, in this case, intoxicating compound has no bearing on anything. Okay. And clearly alcohol had no bearing on anything. So the question then becomes, how then do you violate the statute? Well, as I mentioned to you, there's two ways. Actual impairment, and that is in 11501 subsection 4. And that states specifically, you violate the statute by being under the influence of any other drug or combination of drugs to a degree that renders the person incapable of safely driving. So that's the situation where someone is under the influence of drugs, you can see impairment, you can see conduct that gives rise to an inference that he's impaired. Under subsection 6, which is the presumed section, this simply states that if there is any amount of a drug, substance, or compound in a person's breath, blood, or urine resulting from the unlawful use or consumption of, in this case, a controlled substance, then that's sufficient, notwithstanding whether or not there is any impairment. You may remember Peeper v. Martin, where there was substantial testimony. This is a Supreme Court case in 2013. That there was no impairment. It made no difference. That it was seven billions. I don't remember the exact fraction. But the Supreme Court said it doesn't matter. As long as there is any amount of a drug, or substance, a drug is what it used, that's sufficient. So here you have to look at what are we talking about in terms of the violation. I think it's very, very important also to consider the fact that under subsection B, it states as follows. The fact that any person charged with violating this section is or has been legally entitled to use alcohol, other drug, or drugs, or intoxicating compounds, or any combination of the above, should not constitute a defense against any charge of violating this section. So if you take that section and you look at what the reality here is today, you have now a medical marijuana statute. You have a permitted use in Colorado. So if you were to literally use and interpret this statute to include a metabolite, someone in Colorado who could legally, under Colorado law, smoke a marijuana cigarette. And THC, which is the metabolite, benzoecoline, which is the metabolite in cocaine, THC is the metabolite that one gets from the digestive process, digesting the active ingredient in pot, or in weed, or cannabis. Well, if you have that situation here, someone legally in Colorado can smoke a cannabis cigarette, come to Illinois, be involved in a car accident, simply by driving, and because he's likely to have a THC metabolite in his system, he would be guilty under this statute. If you took and interpreted the statute the way the trial judge in this case interpreted it. Because in Illinois, you can drink. You can legally drink, just like in Colorado you can legally use cannabis. You just can't drive if you've done it to excess. You're exactly right. But the difference would be this. If I had a hangover the next day and I had something in my system that shows I digested gin, and I wasn't under the influence of alcohol, I had a 0.0 BAC, I couldn't be prosecuted under the statute. However, when it's drugs, I can be, if you use this interpretation of the trial court. There, all I have to have is a metabolite. A metabolite is simply the footprint of the digestive process. If cocaine or THC from smoking marijuana, once it's broken down, that metabolic process simply leaves a residue. That's all this is. It's not part of the drug itself. It has no bearing on anything. It doesn't in any way affect capacity to drive. It does not impair nothing. So your analogy is exactly right. In this instance, we can drink alcohol, and even if it was 7 days earlier, it would have no effect. We couldn't be prosecuted. But here, if you use a drug, you could have used that drug at least for pot. It could be up to 30 days before, with cocaine up to 6 or 9 days before. And you can find a marking that says, yes, at some point in time, this person had used that drug. It becomes a status crime. The status of having ingested or used a drug sometime in the past. And that's inconsistent with what, in fact, we should be looking at here. And it's inconsistent in many other ways too. If you look at the definitions, and I go through this in great length in my brief, if you look at the definitions set forth in the Controlled Substance Act, it says a controlled substance means a drug or substance listed as a scheduled controlled substance. So you have an equation here. We're talking about, there's no definition of substance in the Act. But substance is equal to a controlled substance. It's in the context of what we're talking about here. Substance doesn't refer to a metabolite. That would be completely inconsistent with the definitions set forth in the Illinois Controlled Substance Act. They define drug also. So a drug is a substance. So a substance is a drug. It recognizes drugs in the official United States pharmacopeia and the official homeopathic pharmacopeia of the United States. Well, Mr. Martinkus, on that argument you're making, you say a drug is a substance, why would they, in the statute, say it prohibits the operation of a vehicle with any amount of a drug, substance, or compound resulting from the unlawful use or consumption of a controlled substance? If they're all the same, then they're using language that's just surplusage under your theory. No, not necessarily, because I think that what they're talking about, drug, substance, or compound resulting from the unlawful use, that's what they're talking about in that context. I don't see how, if you look at drug, substance, or compound, I don't think there's any, in my view at least, there's no reasonable inference to be drawn that the resulting from language means a metabolite. And the reason I say that is if you look at the Utah statute, the Michigan statute, all these statutes are talked about by these Supreme Courts. And they go specifically, and they explain, unless you specifically have a restriction to have a metabolite, metabolite is not something that is a basis to in fact convict. Is a metabolite a substance? A metabolite, sure, well, almost anything is a substance, sure, you bet. But again, if you look at the, for example, People v. Fiesel, that was the Michigan DOI statute, and it's in my brief. They held that the DOI statute in Michigan does not support a conviction based upon the presence of a metabolite, because the statute of definition of a controlled substance did not include the term metabolite. If you look at what our statute says, and you look at it in reference to the Controlled Substance Act, there's nothing under the Controlled Substance Act that says it's a drug or substance or anything as defined under the Controlled Substance Act. They make reference to the official pharmacopoeia acts. If you look at those statutes, all of that was presented to the judge. Identified every exhibit. I attended them for my instructions. I attended them in my argument. There is no reference. This is not a drug. You have to make an incredible inference to say that what we're talking about here in light of the purpose of the statute is that a byproduct of the metabolic process is sufficient to be convicted. And why do I say that? Because there's other reasons, too. When you look at what, in fact, the legislative comments were when these statutes were enacted, and I'm jumping around a little bit, but I think it's important. I want to make one other count here. Right now, if this medical marijuana statute was passed, effective January 2014, if you interpret the DUI statute to allow a metabolite, you now have an enormous conflict in these two statutes. See, I don't understand it because just because maybe consumption of cannabis is legal under a new law doesn't mean you can drive while you have ingested cannabis. Just like with alcohol. Alcohol is legal for anybody over the age of 21 to drink. But you can drive if you've ingested cannabis if it's been dissipated, if it's gone. That's a different issue. No, no, that's the exact issue here. I thought you were saying there's a big conflict now because you can legally ingest cannabis. Well, let me explain what I mean because I think this will make it clear. If you look at 130, Section 30, this is the new statute. It says, The Act does not permit any person to engage in or does not prevent the imposition of any civil criminal or penalties for engaging in the following conduct. Then it says, They're not talking about under the influence of cannabis or having a metabolite of cannabis in your system. And then in Subsection F, it talks about another restriction. It says, Well, now we're talking about a statute that says you're going to lose your car if you drive a vehicle while under the influence of marijuana. But if you look at the trial court's interpretation, well, this says you'll only lose it if you're under the influence. Not that you smoked two weeks earlier, but now Judge Kennedy's interpretation would be, oh, no, no, no. Under 11-501, you don't have to be impaired. You have no relationship to when you took that. If as long as that metabolite is in your system, that's sufficient. That's inconsistent. And why do I say that also? Isn't that what the Supreme Court said in Martin? No. Yes. Presumed impairment. Yes. Presumed impairment. One of them is what we have here today in this case. It is not. It is not. It is not. Explain to me why. No, it is not. Because presumed impairment, in Martin, what they had is they had a chemical expert come in and say, yes, we took blood draws and there was one or seven billionths of the drug still in your system. There was some residue element of the drug in your system. The argument by the defense in that case was, judge, it's so minor that it shouldn't qualify as presumed impairment. The Supreme Court said we're not going to get into that because we can't distinguish what effect a little bit of marijuana has or a little bit of cocaine has versus a lot. If you have any amount of the drug itself, that is sufficient to be convicted because it's presumed impairment. But not if you simply have a metabolite. And in this case, there was no evidence of a drug. None whatsoever. And if you look at this, People v. Martin said a driver with controlled substances in his body violated Section 11501A6 simply by driving. People v. Faith, the 1994 Supreme Court case, there's no dispute that the statute is intended to keep drug-impaired drivers off the road, not drug drivers who took a drug a week earlier. And that's why the Supreme Court said we presume impairment in this instance. Because there was no evidence of the drug in the guy's system. That's exactly right. And the statute that we're here on today talks about a drug, substance, or compound in breath, blood, or urine resulting from the unlawful use or consumption of controlled substances. Yes. That's what we have here, isn't it? No, we don't have it at all. Well, you've already admitted that benzoyecoline is the metabolite, right? And you've admitted that's a substance. Why isn't that a substance in your client's blood and urine resulting from the unlawful use of cocaine? Because you have to look at it. Because that was what the expert's testimony is. No, no, no. The expert didn't testify to that. The expert testified that benzoyecoline was not a drug or substance listed under the Controlled Substance Act. The expert said when testifying that it made a comparison that the drug produced here, the metabolite. Thank you. She said it's similar to digestion. When you ingest food, it has to break down into other substances. Absolutely. Yes, right. And so what she's saying is the cocaine has broken down into this other substance. Which is not a controlled substance. But under the statute, it is a substance in the blood or urine resulting from the unlawful use of the cocaine. Well, I think I understand what you're saying. It took me a long time to look at this. And I think if you look at the definitions. Well, it sounds like I need to keep looking. Well, I have to keep looking. I really did. Because it's very complicated. And I don't mean it as an insult to you. I mean, obviously, you're probably way smarter than me. You can figure it out. But all I'm saying is that if you look at the definitions and the purpose of the statute, the definitions under the Illinois Controlled Act talks about what this is. It controls substance as a drug. The substance reference when this is written certainly only meant to be the same thing we're talking about. Why would you say that someone who smoked a joint 30 days earlier should be placed and put in jail for 11 years because he got into an accident and someone died? Because there's no impairment there. It's not expressed. It's not actual. It's not implied. It's not presumed. It's nothing. There's no question about that. When you test a person's blood after they've consumed cannabis, what are you looking for? You're looking for the active ingredient, THC, which is evidence of the drug itself. You're looking for cannabinoids in cocaine. I'm sorry. You're looking for the active ingredient in cocaine. That's what you're looking for. I thought THC was the metabolite. It's both. It's tricky. THC1C1 or something like that. I don't remember all the chemical stuff. But one is the actual evidence that there is marijuana in your system right now. When you had the accident or a reasonable time could be implied or something. And the other is the metabolite. The metabolite is what lasts for like 30 days. And that's the whole thing here that I'm talking about. There's nothing here to make reference to that. Because if you take that and you look at that, then you're going to be in a position here where you're convicting people. Counsel, I'm not unsympathetic to your argument, but doesn't that argument need to be made across the street? No, I really don't think so. May I just make one last comment here? Because I think it's real important. If you look at what Senator O'Rourke and Senator Haynes said, and please bear with me on this, this is in May of 2013 with reference to the passing of the Medical Marijuana Act. Senator Haynes is asked, this is by Senator O'Rourke, Senator Haynes, is it true that for medical cannabis cardholders, if you ingest any amount of cannabis that results in the lack of capacity to drive safely, then you are guilty of a DUI? In other words, if the consumption of any amount of cannabis diminishes a person's capacity to think and act in ordinary care, they are guilty of a DUI. Senator Haynes, yes sir. Senator O'Rourke, is it also true that under current law, if a person smokes cannabis and drives, a person smells like cannabis, the passenger compartment of a person's car smells like cannabis, a person has a pot pipe in the center console of his or her car with cannabis residue in it, and a person admits to smoking cannabis an hour before driving, that person is not guilty of a DUI. Unless there is further evidence pursuant to the case of People v. McPee. Senator Haynes, yes sir. So here you have exactly what I'm trying to say, that it's not enough. And they go on in this thing here. If you look at the language here, People v. McPee, here, there's no dispute that Mr. McPee consumed cannabis about an hour before the stop. Instead, the issue is whether there was sufficient evidence that any of that cannabis remained in his breath, blood, or urine when he drove. Unlike each case cited by the state which provided additional evidence of the presence of alcohol in the defendant's body while he was driving, notably evidence of impairment of the odor of alcohol in that defendant's breath, here the state provided no evidence that cannabis remained in Mr. McPee's breath, blood, or urine while he was driving. People v. Allen, the statute does not criminalize having breath that smells like cannabis. Furthermore, even though the trial court found the officer's testimony credible regarding the defendant's admission of smoking cannabis the night before his arrest, the state put on no evidence that there would have been any amount of the illegal drug in the defendant's breath, urine, or blood at the time of the defendant's arrest as a result of smoking cannabis the night before. All these cases, all these cases, read the Utah statute, the Michigan case. Mr. Martinez, I'm sorry to be out of time. I know, and I'm so sorry, I have so much more to argue. Well, you have a chance of rebuttal. Okay, thanks. Ms. Johnson. May it please the court, counsel? Yes. Justice Turner, I think you hit it right on the head. These are arguments that are better directed to the legislature as to what apparently the defendant here thinks the law should be.    It's not what the law is. The law here is if you have a drug, a substance, or a compound, and it results from the unlawful use of a controlled substance, you are guilty under A6, which is a presumed impairment. Impairment is not something that has to be separately proven. That was something that defense counsel conceded before the trial court when there were different... Doesn't the presumption have to make sense? The presumption does make sense because the evidence of the benzoyl econeme is the existence of the residue that is still there. That is the further evidence that still exists. So you could go on vacation to Colorado and be tempted and eat a brownie on the first day of your vacation, and 10 days later, having consumed no more, come back to Bloomington Normal or Springfield and get in your car at the airport, and if you make a careless turn across the lane, you get stopped, and you admit or give the officer some reasonable probable cause, and then you're tested, you're going to be guilty of DUI. That's the effect of the language or the statute as you read it. If the benzoyl econeme or some other residual would be... We don't have evidence as to the length of time for full dissipation. We've had cases, particularly involving probation revocation and stuff like that, where they talk about how long the residue remains in your system. And if it is still... Scientifically, that's possible to do. And for each defendant that would be stopped under that scenario, if that residue is still there, if that substance, which he conceded it's a substance, if that substance is still there... I didn't ingest the substance. Then yes. I ingested the original controlled substance. Correct. And your blood and or urine has a substance resulting from the consumption of an unlawful... the unlawful consumption of a controlled substance. Why would that be unlawful consumption if it was consumed lawfully in Colorado? It could be evidence that you were required to present that is a burden under the statute, that if you did lawfully ingest it. My point is there wouldn't be guilt if the consumption occurred in Colorado where it was legal and then you have your accident 10 days later in Illinois, that wasn't unlawful consumption of that substance. If you presented evidence, that's correct. It's not unlawful. However, it's still a substance resulting from, now it would be the lawful use. So it's not that you would be guilty because of the fact that it's not a substance or a drug. It's because it didn't result from the unlawful use of the... Is the statute directed at the use or the impairment? The statute, Martin clearly says in the statute, it is based on the use. It is a substance... Because impairment is presumed. Impairment is presumed. Which is scientifically unsound. That's up for debate. Well, is it? The legislature has said that they are not going to enter into a debate of the impairment based on if you are two hours post-cocaine or five days post-cocaine or any other controlled substance. It is presumed. That's what the legislature has written into this plain language of the statute. It is presumed. Well, there are a lot of people who would say there's a degree of impairment with a low blood alcohol. But we set a limit for the content or for the quantity left. And courts have recognized that alcohol is treated different. That we have been able to set a limit where impairment exists or it is not. Well, I'm pretty far behind the times, then, if we haven't set a limit on impairment for particularly these kind of drugs. Respectfully, that's an argument for the legislature. The courts have been clear at this point in this forum, there doesn't have to be evidence of impairment. It is presumed. And that's not the argument that we're making. We have to deal with the statute we have. Not the one that anybody thinks we should have. So an expert, you could bring in an expert that would say, theoretically, an expert could come in and testify, if cocaine was ingested more than 24 hours ago, there's absolutely no impairment based upon these scientific studies or my opinion as an expert. That would be sufficient to rebut the presumption. It would not, if there was benzoyl econeme still in the blood or urine. I didn't want to cut you off if there was a follow-up. No. Okay. Well, counsel, just to add to it, just to connect, because clearly he has some of the concerns that I do about the statutory language. Although, unlike counsel, I think it seems pretty clear that in Martin, the Supreme Court even took it a step further by removing the proximate cause language for a serious injury or a death. So that not only do they presume impairment, they presume that that is the proximate cause of an injury. So they've even gone further than the legislature through what they said in the Martin case, it appears. I don't think they've gone further than the legislature. Well, it looks like to me they just plumb took out the statute proximate cause in the Martin case. The statute provides that if there is probable cause based on an arrest or the giving of a uniform citation that you have... Statute what? Okay, I'm getting two statutes confused. I apologize. I'm getting them confused. With Martin, you are correct. They did go beyond here and they did take out a proximate cause relationship. This is where we get back to its... Yes, they took it completely out of the statutes if the legislature never put it in there. They did. So under this example, since they're going to presume impairment, if there's somebody injured, whether there's impairment or not, because of that presumption, this is a felony. Yes. And that's what the Supreme Court said in Martin. And that is a true interpretation of the plain language of the statute that we have here. Well, do you think that might be problematic as Mr. Martinkus has argued? I certainly understand why it's problematic for his client. I certainly understand why it makes a predicament for others. Well, most of his argument, however, pertains to cannabis. And with the new legislation, that would seem to exacerbate what might already be a problematic statute. However, in this case, we're dealing only with cocaine. Correct. Does that distinction make a difference? In my mind, it very well might. Well, the legislature has made a distinction between the harms of cocaine and cannabis and allowing there to be permissible uses for cannabis, they've made that distinction clearly. And if there are further distinctions that will need to be made because of that, again, that's something that needs to be addressed across the street. Can you talk a little bit about the jury instruction issue? Mm-hmm. The proposed jury instructions that were offered? The ones that the judge gave when the jury asked the question. The answer to the... Correct. First of all, I apologize if in my brief I initially misidentified the instruction that I believed the jury was referencing. I reviewed the trial record, and when the question came in, there isn't any place in the trial record that it specifically identified which jury instruction they were referencing. Because of that, I made an error in which one I believed it to be. Counsel has presented, although without citation, that it's a different one than I had. But based on the way it's written, I have no reason to question that he is referencing the correct instruction. So it's Proposition 2, correct? But I had... Don't worry about that. Right. Either way, I apologize. It doesn't change the analysis. Okay. Well, let's cut to the chase because I don't want you to run out of time on this. Didn't the trial court direct this jury to find Mr. Martinez's client guilty by answering the question the way it did? No. Why not? The defendant had two defenses. The first defense was that this was not ingestion that resulted in benzoyl echonine. It was the natural process of digestion. The trial court's answer did not take that decision away from the jury. The other defense... Wait a minute. There wasn't any jury instruction involving digestion or ingestion, was there? No, but that was his defense to the... The question was, was this metabolized substance? That's the one the jury wanted to know. And it is. Therefore, they must have had some question in their mind whether the expert testimony as presented by the state was sufficient. Do you agree with that, William? Otherwise, why ask the question? I would say that we don't know the reasons behind the jury question. We only know that the jury asked the question. We know that they asked the question because they wanted guidance as to what the answer was. Equivocally, we know that. Correct. The trial court just says, yes, it's a substance, doesn't even follow the recommendation of the defense counsel or the state's attorney back to square one. Not only that, but the court said it's a drug, a substance, or a compound. And the expert testified it was not a drug. Didn't the expert testify to that? Respectfully, no. What the expert repeatedly testified to, it was not a drug listed in the controlled substance. It was not a controlled substance. Well, what evidence showed it was a drug? Let's put it that way. Well, the most obvious evidence was that Tara Kearns testified that three different drug tests were administered and that three different drug tests were positive for the presence of benzoylecholine. Which everybody agrees is a metabolite that results from the ingestion of cocaine. And we have a concession that it's a substance that results from cocaine use as well. Today in oral arguments. Correct, correct. But where in the evidence, was there any evidence it would be considered a drug or a compound? The only specific evidence that it was a drug was her testimony that the test, three different tests were administered, three different drug tests. I think Mr. Martinkus asked her directly, is this a drug? And she said no. And I don't want to mistake the record, but I believe what she responded was, and I believe what the question was, is it a drug that is listed as a controlled substance? And I believe the response was, it's not a controlled, it's not a listed controlled substance. Where's the evidence? You're saying there's evidence it was a drug. Where? I have no evidence. The evidence that it was a drug was her testimony that three drug tests were given and that this was a substance that was a positive indication on a drug test. Clear inference and a fair inference there. It's a drug. You're testing for drugs three different times. It's positive. It is a drug. She did not testify that it was a drug. She did not testify. She didn't testify it was a compound either. In fact, under the definition of a compound, I don't believe it would be. There's nothing in the record that showed that it would be considered to be a compound. But what is in the record is that three drug tests, and you cannot take that, you can't change the characterization of what that test is. It's not a caffeine test. It's not a sugar test. It's a drug test. It's testing for drugs. And three different times that drug test was positive. And apart from that, she did testify as to its nature as a substance when she was explaining, as Justice Turner brought up, that cocaine is something that is broken down into other substances. So there was direct testimony. It's a drug. It's a substance. And it is a drug that tested positive. It was known by being indicated on a drug test. What decision is it to decide in a jury trial whether there was a substance that resulted from the consumption of cocaine? It was the jury's decision to decide whether he had unlawfully ingested cocaine and benzoyl econine resulted from it. Well, that's not precisely the question. Because the jury said, is this such a substance? And the jury should have been allowed, don't you think, Counsel, to make that decision because when the trial court sent back its response, that was the end of the case. With the utmost respect, the decision is whether the trial court abused its discretion. It's not whether this court or another judge would have handled it differently. If there is a verdict in favor of the state, you have abused your discretion without any question. And I personally don't believe that that is the result, and especially given the defenses that the defendant presented. Okay, well, play along with me for a minute. Say this court decides that the trial court should not have responded to that question the way it did, should the state be entitled to a new trial, a retrial, or should it be double jeopardy? Because isn't this a situation where we're giving the state, if we send it back, an opportunity to present additional evidence that it failed to present at the first trial? I don't think double jeopardy attaches because I believe there is more than sufficient evidence that was already presented to the jury to find a conviction. Well, you believe that, but this defendant was deprived of his jury trial when the trial court took that fact question away from the jury. If this case is sent back because we think that question should not have been responded to the way it was, this court's just going to let the state fix the problem that it made in the first place, and that is not presenting through its expert sufficient evidence to show that this metabolite was a drug or a compound or a substance. Isn't that a problem for the state in regard to double jeopardy? If you find that the other testimony that it wasn't a, if you find that there isn't evidence it was a drug or a substance, and I'm going to focus on those two because we have the drug test and we have her testimony, it's broken down into substances. If you find that that evidence, along with the other evidence, is insufficient, then it is a problem for us. But I believe that evidence is more than sufficient, and therefore double jeopardy would not attack. What I'm getting at, if looking at it in the light most favorable to the state, could a rational trial found that this was a substance, even if we say yes, doesn't it allow the state to put on additional evidence at a new trial that it failed to put on at the first trial, and therefore put the defendant in double jeopardy? I think it allows the state the opportunity to better articulate the evidence that was presented here. Well, my guess would be as if there were a retrial that the questions asked to the expert would be different than the ones that were asked at the first trial, and that the evidence would hone in on whether this was a substance that fits the definition of the statute that was in the blood, breath, or urine as a result of the consumption of an unlawful drug. That question was not imposed on this expert. So the state, under your theory, if it goes back and put on the additional evidence, clean this case up. That might be the right answer. I don't know. I'm asking. I do believe that. Okay. So I won't interrupt anymore. That's okay. As defense counsel said, there were a lot of issues here. We did get into all of them. I will be happy to answer any other questions you have, but on other issues that were not specifically addressed here today, I stand on my brief, unless you have other questions. I don't see any. Thanks, Ms. Johnson. Thank you very much. I want to clarify one thing. When I agree that a metabolite is a substance, I don't agree that a metabolite is a substance resulting from the unlawful use or consumption of the drug. I believe that it's a substance resulting from the process of breaking the substance down. It's not ingestion. It's digestion. So there's a big difference, and that goes along with exactly what you're saying. That's what I tried to argue, and I did argue it, and then it was taken away from me. So I completely agree. But it doesn't occur in your system unless you've consumed cocaine. There's no question about that. But when you look at the whole purpose of the statute. Isn't there any question about that? What was the question? It only comes from cocaine. Benzoylglycamine only comes from ingesting cocaine. Who says? That's not true at all. Oh, I thought that's what the statute said. No. No, I don't think so. You can get it from, there's cases where you can get it from touching bills, where you haven't actually, where coke money has come through. There's lots of things. Wait, wait, Mr. Martinez. Yes. Did not the expert testify that the only way benzoylglycamine comes about is from cocaine? Yes, but not. Nothing else creates benzoylglycamine. I think that's right. But there's a huge difference between whether or not that can be done by ingestion, whether it can be done by touching bills filled with cocaine. There's all sorts of scientific articles. We never get into that because the state never put out any evidence. There's never any evidence. But if benzoylglycamine is in the blood, it got there because that person consumed cocaine. At some point in time. In most cases, consumed or it was somehow absorbed through the skin. There are cases that talk about that. So it's not 100%. That's all I'm saying. That never came up because I don't believe that testimony is really ever addressed or really addressed in any meaningful way. That just really wasn't part of the deal. Can I ask you one more question? Absolutely. You were there, Mr. Rankin. Yes, I was. You had some sort of an advantage over Ms. Johnson. When you got this question from the jury, it seemed to me both, you know, you wanted to make your argument. Of course I did. I knew what was going to happen. But you and the state both eventually agreed how to instruct the jury and Judge Kennedy. We were both shocked. To be honest, both state and I were both shocked that he would. I told the judge right there, you're taking away, you're directing a verdict. That's exactly what I told him. Five, ten minutes later, the verdict was there. I mean, just on the confusion part alone, that someone could be considered a drug when there's no evidence of that, compound no evidence of that. So, yeah, I mean, no offense, but it was a terrible answer for that question. Nobody responded. A couple of real quick points because I know you probably want to get out of here. But when the state says, oh, well, if it was a lawful consumption, then the statute doesn't apply. That's hogwash because you look at subsection B. If any person charged with violating this section is or has been legally entitled to use these drugs, it shall not constitute a defense. So go back to Justice's net position. If you're impaired. No, no. That's what that means. I don't think so. Yes, it does. That refers back to section A. But it's actually presumed. Yes, I agree with you. It's actually presumed. And the other thing I wanted to point out is just one, when you talk about people versus modern, I think this is really crucial. This is what the Supreme Court actually said in people versus modern. Although the evidence did not establish exactly whether the defendant last used methamphetamine, a rational jury could have found that his last use was sufficiently recent that some remnants of the drug remained in his urine on the night of the accident. Such an inference is supported by Anderson's testimony that it's common to find a drug in a person's urine but not in his blood. And I think Martin is really clear. We're not talking about any sort of metabolite. Because, again, by the very nature, metabolite doesn't impair. It doesn't matter if I ate a brownie 15 days ago. It has no effect on my driving. But if I have some remnant of the drug, yes, we're not sophisticated enough to be able to decide. There's a little bit of the drug in my system, enough to impair or a lot. That's the problem. Why do some states then include the metabolite in their list? Well, that's a really good question. I don't know why they would. But I think you raise a good point. Because I put in my brief, there's five other statutes in which the legislature used the word metabolite. If that's what they wanted to use, they could have used it here. But, again, it makes no sense. There are other states that don't. Yes. Most states don't. I mean, there's three or four states that put the word metabolite in. And I don't think, you know, and, again, each one's a little different. But it's just an enormous inferiority. My client is now 11 years in jail with his 2-year-old son because he had the misfortune of having cocaine, well, sometime in his system. And, you know, this whole thing. Well, she testified 24 to 28 hours back. Even so. But, I mean, there's no corollary to her testimony. And I'm not even getting into the issues of whether she's qualified to testify, whether they gave us any sort of disclosures. That's in my brief. I've not talked about Missouri v. McNeely. That whole question of whether or not his giving the blood was even constitutional. King and Fink. All those. The Fink decision, Supreme Court, 91, whatever it was, is all up in air now. I haven't even reached those decisions. And how about the issue of whether or not they failed to join these? They prosecute them on the driving. And then they prosecute them later on the DUI. All of that is under 3-3. It's multiple acts. They have to be in the same proceeding. That clearly violates devil's jeopardy. I've got too much stuff. Thank you, judges. Yes. Appreciate it.